UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x
:
UNITED STATES OF AMERICA,         :
:
:
:
:
v.                                :   Docket No. 1:09-CR-00626-JBS-2
:
VLADIMIR DRINKMAN,                :
---------------------------------------------------------x

## DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S DENIAL OF HIS PETITION FOR COMPASSIONATE RELEASE

VLADIMIR DRINKMAN (hereinafter "Mr. Drinkman" or "Defendant"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion for Reconsideration of Court's denial of his Motion for Compassionate Release pursuant to 18 U.S.C. §3582(c)(1)(A)(i).

In his original motion, Mr. Drinkman requested that the Court enter an Order, granting his motion for Compassionate Release and reducing his sentence to time served, or modify his sentence to allow him to serve the balance of his sentence of imprisonment on home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

In support of his motion, Defendant argues that he suffers from several serious diseases. He has a history of asthma, chronic bronchitis, and rhinosinusitis, which was confirmed by his medical records provided to the Court. Additionally, as an 18 U.S.C. § 3553(a) factor, Defendant demonstrated evidence of his post-sentencing rehabilitation, to wit, and as was discussed in detail in the original motion, ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1

████████████████████████████████████ In addition, while in BOP custody Mr. Drinkman took a number of various courses/classes, including GED - General Education Diploma; ESL - English Second Language, plus some 20 other courses, including a program that deducts 15 days from his sentence under First Step Act.

The Court denied the motion stating that "Defendant does not adequately address whether he truly possesses medical condition(s) that are considered COVID-19 risk factors," and "Defendant has not even attempted to address why he merits release under the § 3553(a) factors." Dkt. 147 at 6-7.

For the reasons stated below, the Court should Reconsider its denial of his motion for Compassionate Release and grant that motion.

**Standards for Motion for Reconsideration of Court's Order**

Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for Reconsideration, Circuit Courts, including the Third Circuit, have held that motions for reconsideration may be filed in criminal cases. See United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003) ("As noted by the Second and Ninth Circuits, motions for reconsideration may be filed in criminal cases"); United States v. Martin, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("As the Second Circuit noted . . . , post-judgment motions for reconsideration may be filed in criminal cases"); United States v. Mendez, 2008 U.S. Dist. LEXIS 120217, 2008 WL 2561962, at 1 (C.D. Cal. June 25, 2008); United States v. Hector, 368 F. Supp. 2d 1060, 1063 (C. D. Cal. 2005), rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007) (ruling on a reconsideration motion regarding an order denying a motion to suppress).

"[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." Mendez, 2008 U.S. Dist. LEXIS

120217, 2008 WL 2561962, at 2 (citing Hector, 368 F. Supp. 2d at 1063, and Fiorelli, 337 F.3d at 286). In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. See id. (applying the standard governing Rule 60(b)); Hector, 368 F. Supp. 2d at 1063 (analyzing a reconsideration motion as a Rule 59(e) motion). Federal Rule of Criminal Procedure 57(b), "Procedure When There is No Controlling Law," states in relevant part, "A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."  Under Local Civil Rule 7.1 (i) for the District of New Jersey, "[u]nless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge."

      Rule 59(e) of the Federal Rules of Civil Procedure authorizes motions to alter or amend a judgment. Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995). A "district court enjoys considerable discretion in granting or denying" a Rule 59(e) motion. McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (quoting Federal Practice and Procedure § 2810.1) A Rule 59(e) motion may be granted on any of four grounds: (1) a manifest error of law or fact upon which the judgment is based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; and (4) an intervening change in controlling law. McDowell, 197 F.3d at 1255 n.1 (quoting Federal Practice and Procedure § 2810.1).

      It is well-settled that a defendant may move for reconsideration of a

court's order, but "[t]he standard for granting such a motion is strict . . . ." <u>Secretary United States Dept. of Labor v. Koresko</u>, 726 F. App'x 127, 131-132 (3d Cir. 2018)(citing <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration may be granted only "to correct manifest errors of law or fact or to present newly discovered evidence." <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985); <u>Max's Seafood Cafe v. Max Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999). A prior decision may be altered or amended only if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. <u>Id</u>. A motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked." <u>United States v. Rashid</u>, No. 93-264, 2009 U.S. Dist. LEXIS 36159, at 5 (E.D. Pa. Apr. 7, 2009).

**Defendant's Motion for Reconsideration of Court's Denial of his Motion for Compassionate Release Should be Granted**

**a. There is Intervening Change in Controlling Law**

The Court in its Opinion relied on Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A). It states that "the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13." Dkt. 147 at 4-5. Further, the Court cited to the Sentencing Commission's interpretation of what constitutes

"extraordinary and compelling reasons warrant[ing] the reduction." Id. at 5-6.

However, several Circuit Courts have recently opined that district courts are not required to consider the U.S. Sentencing Guidelines Manual § 1B1.13 factors when reviewing compassionate release motions filed by incarcerated persons. See, e.g., United States v. Jones, 980 F.3d 1098 (6th Cir. 2020)("§ 1B1.13 does not appl[y] to cases where an imprisoned person files a motion for compassionate release."); United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)(the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of § 1B1.13, limits the district court's discretion); United States v. Rios, No. 3:94cr112 (JBA), 2020 U.S. Dist. LEXIS 230074, at 8-9 (D. Conn. Dec. 8, 2020)( Courts are therefore not limited to the specific "extraordinary and compelling reasons" enumerated in Application Note 1 of Guideline section 1B1.13, nor the directive by Attorney General Barr to consider primarily those acute health problems created by the pandemic, and may exercise their discretion in determining if the confluence of all the issues raised in defendants' motions for release warrants granting them."); United States v. McCoy, No. 20-6821, 2020 U.S. App. LEXIS 37661, 2020 WL 7050097, at 9 (4th Cir. Dec. 2, 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts[,] . . . district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.") (internal quotations omitted); United States v. Gunn, No. 20-1959, 2020 U.S. App. LEXIS 36612, 2020 WL 6813995, at 2 (7th Cir. Nov. 20, 2020) (agreeing with the Second Circuit that district courts have full discretion to define what constitutes "extraordinary and compelling" circumstances).

The <u>Jones</u> Court explained:

> Examining the four corners of § 1B1.13 alone, it becomes immediately apparent that the policy statement does not wholly survive the First Step Act's promulgation. The first sentence of § 1B1.13 predicates the entire policy statement on the Director of the BOP's filing a motion for compassionate release. See U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018) ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . .") (emphasis added). The commentary's fourth application note—titled "Motion by the Director of the Bureau of Prisons"—similarly explicates that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." § 1B1.13 cmt. n.4. Again, the main text of § 1B1.13 does not define "extraordinary and compelling." § 1B1.13(1)(A). Instead, the guideline commentary's first application notes outlines "circumstances" where "extraordinary and compelling reasons exist[.]" § 1B1.13 cmt. n.1. The last of these circumstances is a catch-all provision that still refers to the Director of the BOP as the absolute arbiter of "extraordinary and compelling." § 1B1.13 cmt. n.1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).") (emphasis added). In short, the policy statement's language does not reflect the First Step Act's procedural reforms to compassionate release; "though motions by the BOP still remain under the First Step Act, they are no longer exclusive[.]" Brooker, 976 F.3d at 235. Thus, "we read the Guideline as surviving [the First Step Act], but now applying only to those motions that the BOP has made." Id. at 235-36.

<u>Jones</u>, 980 F.3d 1098, __, 2020 U.S. App. LEXIS 36620, at 19-21.

As such, in <u>Jones</u>, the Court held that "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and **have full discretion to define "extraordinary and compelling" without consulting the policy statement § 1B1.13.**" <u>Id</u>. 2020 U.S. App.

6

LEXIS 36620, at 22.

In light of this recent development in relevant case law, this Court's reliance on the § 1B1.13 policy statement is not warranted.  As such, the Court should reconsider the issue of whether Mr. Drinkman's medical conditions compel sentencing reduction without being characterized as "extraordinary and compelling reasons."

### b. Mr. Drinkman Established that he is Suffering from a Serious Medical Conditions, Making Him Particularly Vulnerable to Covid-19

First and foremost, Defendant has provided sufficient evidence showing that he suffers from the medical conditions making him particularly vulnerable to negative consequences of being affected by Covid-19 virus.

In particular, he submitted medical records unequivocally demonstrating that Mr. Drinkman suffers from several serious diseases that directly increase his chances to die in prison if infected with the virus. The records before the Court show that he has a history of asthma, chronic bronchitis, and rhinosinusitis.

Specifically, the records show that Mr. Drinkman had hospitalizations during the period from March 2005 through July 2005 with **bronchitis and rhinosinusitis**, and, in May 2005, he was hospitalized with **asthma exacerbation**. Additionally, throughout the period from May 2005 until 2008, Mr. Drinkman had **multiple asthma exacerbations** and he was referred to see a pulmonologist.  The same documents states that during the year of 2009, Mr. Drinkman was hospitalized with **right sided pneumonia and bronchitis**. In February 2010, he developed **left sided pneumonia.**  This evidence is more than enough to demonstrate that due to his chronic respiratory problems Dr. Drinkman is vulnerable to the virus.

As such, the Court overlooked the fact that Defendant did demonstrate that

7

he possesses medical conditions that are considered COVID-19 risk factors. It also made an erroneous finding stating that "[t]he fact that the Government introduced evidence that Defendant's BOP medical records makes no mention of the alleged conditions, and that Defendant has not sufficiently this glaring omission overlooked, is troubling."

In fact, Defendant did address that purported "omission," explaining that when extradited to the United States, he was initially housed in a county jail before he was transferred to FCI Philadelphia, a federal detention facility located in Philadelphia. Upon his arrival in Philadelphia, he went through intake and was examined by a nurse, who asked him about his medical history, and he told her that he was diagnosed with Bronchitis when he was younger. The nurse asked him if he was suffering from it at that moment and he replied "no." The nurse said "well, then there is nothing to worry about" and did not note that disease in the medical records. All other instances in the BOP medical records that asked about any type of pulmonary medical conditions, such as asthma, or bronchitis, referred to Mr. Drinkman's present condition, at least as far as Mr. Drinkman understood the questions to be, and since at the time of questioning he was not suffering from any of them, he answered no.

Additionally, the Court totally ignored Mr. Drinkman American doctor Marina Gafanovich, M.D.'s conclusion that "[i]n light of Petitioner's medical history, I believe with a reasonable degree of medical certainty that Mr. Drinkman's health condition makes him particularly vulnerable to concomitant COVID-19 infection and to developing acute symptoms from the virus. Therefore, it is my medical opinion Mr. Drinkman should be immediately released from FCI Allenwood Low."

In order to provide further support of the fact that Defendant possesses medical conditions that are considered COVID-19 risk factors, his former wife submits a

8

sworn affidavit where she independently confirms that she "personally know[s] that he was hospitalized between March 2005 and July 2005 with bronchitis, asthma exacerbation and rhinosinusitis. Throughout the period from May 2005 until 2008 Mr. Drinkman had multiple asthma exacerbation and was referred to see a pulmonologist." Exhibit 1.  Defendant's several relatives, who live in Russia, also submit signed certifications stating that he has suffered from asthma, chronic bronchitis and rhinosinusitis.  See Exhibits 2, 3, 4.  Additionally, the Court is advised that in the next 30 days the undersigned Counsel is expected to receive additional medical records from Russian Federation, further confirming that Defendant suffered the medical conditions in question.  In light of the fact that there is a holiday period in Russia, which lasts until January 11th, Defense counsel is unable to get it earlier. Therefore, it is respectfully requested that, if the Court believes it will need the additional Russian medical records before making its ruling, the Court reserve its decision until the undersigned Counsel files supplemental submission in late January of 2021.

        Therefore, since it is well-known that patients with asthma, bronchitis, and past history of pneumonia are at a higher risk in case they acquire COVID-19 infection, the Court should have granted his motion based on particular vulnerability to the virus. Indeed, "where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the **risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality**. United States v. Diaz, No. 1:16-cr-00070-DAD-BAM, 2020 U.S. Dist. LEXIS 178385, at 8 (E.D. Cal Sep. 27, 2020)("**Erring on the side of caution**, the court finds defendant's fear of reinfection, and the potential consequences to him were that to occur, to be potentially

9

well-placed"); United States v. Parker, 2:98-cr-00749-CAS, 2020 U.S. Dist. LEXIS 89904, 2020 WL 2572525, at 9-10 (C.D. Cal. May 21, 2020) ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); United States v. Rodriguez, No. 2:03-cr-00271-AB, 2020 U.S. Dist. LEXIS 58718, 2020 WL 1627331, at 10-11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence."). Just this month a major hacker, Ardit Ferizi, who in 2016 was sentenced to 20 years for sharing personal information about U.S. military servicemembers with the Islamic State group, was released on compassionate release due to history of obesity and asthma. See https://www.courthousenews.com/judge-truncates-sentence-of-young-hacker-who-helped-islamic-state/, https://www.fox23.com/news/national/imprisoned-hacker/GYH42PA3GVWPGDTDKLZMHFFZOA/. See also, VAED, Dkt. 1:16-cr-00042-LMB-1, # 105.

   Healthwise, Mr. Drinkman is in remarkably similar situation to Ardit Ferizi, as not only Mr. Drinkman has a history of adverse pulmonary medical conditions, but he is also overweight, which, according to CDC puts him in greater risk of suffering dire consequences of COVID-19. Mr. Drinkman is 40 years old; his height is 6.1, and his weight is 235 lbs., which equal to a Body Mass Index of 31.8. See https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmi-m.htm. CDC has found

that individuals with excess weight are at even greater risk during the COVID-19 pandemic. See https://www.cdc.gov/obesity/data/obesity-and-covid-19.html. For example, according to CDC an adult whose height is 5.9 and a BMI of 30 or above, is considered obese, and is at much higher risk of severe illness from COVID-19. https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#InterpretedAdults. What's more, Mr. Drinkman has served most of his sentence, while Ardit Ferizi barely scratched the surface.

It is critical to note that the BOP's medical services are inadequate to address Mr. Drinkman's medical conditions or to protect him if he contracts the virus. In fact, the current virus situation in Allenwood Low has been deteriorating rapidly. Specifically, there is a major outbreak of COVID-19 at Allenwood Low facility where 152 inmates and nine staff have the disease. See Exhibit 5. See also, https://www.bop.gov/coronavirus/. Most troubling, USP Allenwood, which is located just across the road from Mr. Drinkman's prison, already had one inmate die from COVID-19. Upon affirmation and belief, this happened even though USP Allenwood forced all its inmates into a strict quarantine, keeping all the inmates in their cells 24 hours a day. In Allenwood Low, where Mr. Drinkman is serving his sentence, inmates are housed in a dorm, which significantly increases his chances of getting infected. Mr. Drinkman's unit, called Brady B, houses 120 inmates, but has only seven showers and five bathrooms. When the outbreak started in Allenwood Low this Fall, a BOP officer announced that the facility will go into a total lockdown and all the inmates will be tested for COVID-19. To this day the only lockdown measure implemented was to forbid all inmates from going outside, while inside the dorm everything has continued as usual. In addition, no universal testing for COVID-19 was implemented by the facility. According

11

to Mr. Drinkman, currently only two units with inmates have implemented testing for COVID-19 for some inmates, and the infection rate in those units is approaching 60% - 70%. Considering conditions of confinement discussed above, its impossible for Mr. Drinkman to engage in any type of social distancing while in Allenwood Low. Mr. Drinkman has only approximately 23 months left to serve out of 144 months to which he was sentenced. He is extremely scared that during his remaining time in BOP, he will get infected with COVID-19 and die in prison. Mr. Drinkman's fears are well founded as FCI Allenwood and BOP overall, completely failed to protect its inmates from the virus, despite all its measures and safety protocols.  See Exhibits, 6, 7, 8.

       Lastly, the Court is respectfully reminded, that, as was stated in the original motion, Mr. Drinkman is not a United States citizen or permanent resident, therefore, he is not eligible for transfer to the half-way house for 6 to 12 months, and he cannot participate in the BOP RDAP program, (Inmate Substance Abuse Treatment), which could have decreased a full 1 year of his sentence.  Thus, solely due to his immigrations status he cannot benefit from those programs offering substantial incarceration time reduction.  This provides yet another reason to grant this motion so the Court can remedy this unfair and discriminatory result.

### c. Multiple 3553(a) Factors Warrant Reduction of Defendant's Sentence

       What's more, multiple relevant 3553(a) factors also warrant the reduction of Defendant's sentence. It is well-settled that district courts must "exercise[] [their] discretion by considering the relevant [§ 3553(a)] factors in setting the sentence. United States v. Handerhan, 739 F.3d 114, 120 (3d Cir. 2014).  It is critical to note that "district courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." United States v. Jones, 980 F.3d 1098 (6th Cir. 2020)(emphasis added).

Under 18 U.S.C. § 3553 (a), the Court must undertake its overarching statutory charge to impose a sentence that, considering "the nature and circumstances of the offense and the history and characteristics of the defendant," is "sufficient, but not greater than necessary":

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

18 U.S.C. §§ 3553(a).

Here, the history and characteristics of the Defendant, ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉ see Exhibit 9, post-sentencing activity, and personal reasons to re-establish his connection with 9-year-old daughter, see Exhibit 1, whose is experiencing extreme hardship without a father in her life and thus desperately needs his support and guideline, clearly warrant reduction of his sentence to time served or at least its modification to home confinement.

As such, Mr. Drinkman's motion should be granted as the health conditions that make him particularly vulnerable to contracting the novel coronavirus and

13

of developing acute symptoms from the virus, and other considerations constitute "extraordinary and compelling" circumstances under Section 3582(c).

        WHEREFORE, Defendant respectfully requests that the Court enter an Order, granting his motion for compassionate release and reducing his sentence to time served, or modify his sentence to allow him to serve the balance of his sentence of imprisonment on home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and ordering such other and further relief as this Court deems just, proper and equitable.

Dated: December 29th, 2020

        Respectfully submitted,

        /s/ Igor Litvak
        _____

        Igor Litvak, Esq.
        Attorney for Defendant
        NY Bar No. 5109749
        The Litvak Law Firm, PLLC
        1733 Sheepshead Bay Road, Suite 22
        Brooklyn, New York 11235
        Office: (718) 989-2908
        E-Mail: Igor@LitvakLawNY.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this motion via ECF on December 29th, 2020.

s/ Igor Litvak
Igor Litvak
